In re:

ROGER L. SKOCZEK and
DONNA R. SKOCZEK,                                   **Case No. 16-30451-11**

      Debtors.

---

***THIRD AMENDED* CHAPTER 11 PLAN OF REORGANIZATION**
**OF ROGER L. SKOCZEK and DONNA R. SKOCZEK**
**DATED ~~APRIL 19, 2017~~ ~~APRIL 26, 2017~~ ~~JUNE 2, 2017~~ *JUNE 9, 2017***

---

    Roger L. Skoczek and Donna R. Skoczek, the debtors and debtors-in-possession herein, pursuant to 11 U.S.C. § 1121, hereby set forth the following as their proposed reorganization plan (the "Plan"):

## ARTICLE 1
## DEFINITIONS

    For the purposes of this Plan, the following terms shall have the respective meanings set for the below:

    1.1   "Administrative claim" shall mean a claim for administrative expenses under Section 503(b) of the United States Bankruptcy Code that is an Allowed Claim and is entitled to priority in payment pursuant to Section 507(a)(1) of the United States Bankruptcy Code.

    1.2   "Allowed claim" shall mean any Claim, proof of which is filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim with respect to such Claim, or which has been or hereafter is scheduled by the Debtors as liquidated in amount and not disputed or contingent and in either case, a Claim as to which n objection to the allowance thereof has been filed within the applicable period of limitation fixed by the Code, the Bankruptcy Rules, or an order of the Court, or (b) as to which any objection has been determined by an order or judgment of the Court allowing such Claim in whole or in part that is no longer subject to appeal, dc novo review, or certiorari proceeding, and as to which no appeal, de no review, or certiorari proceeding is pending.

    1.3   "Bar Date" shall mean February 15, 2017.

    1.4   "Avoidance Actions" shall mean any claims or causes of action of the Debtors' estate under or pursuant to Code sections 544, 545, 546, 547, 548, 549, 550, 551, or 553.

    1.5   "Case" shall mean the above-captioned bankruptcy case.

    1.6   "Causes of Action" shall mean, whenever arising, all rights, claims, and causes of action accruing to the Debtors or the Trustee, before, on, or after the Petition Date, and not

1

otherwise settled or compromised pursuant to this Plan or otherwise, including, without limitation, all Avoidance Actions.

1.7 "Claim" shall mean any right in existence on the Confirmation Date against the Debtors to (a) payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) an equitable remedy for a breach of performance if the breach would rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.8 "Code" shall mean the Bankruptcy Code, 11 U.S.C. § 101 et seq., and any amendments thereof.

1.9 "Confirmation Date" shall mean the date upon which the order confirming the Plan is entered by the court in accordance with the provisions of Chapter 11 of the Code.

1.10 "Confirmation Order" shall mean the order of the Court confirming the Plan.

1.11 "Court" shall mean the United States Bankruptcy Court for the ~~Western~~ **Eastern** District of Wisconsin in which the Debtor's Chapter 11 case, pursuant to which this Plan is proposed, is pending, and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

1.12 "Creditor" shall mean any person or its assignee that holds a claim against the Debtor for unsecured debts, liabilities, demands, or claims of any character whatsoever, including any under-secured creditors.

1.13 "Debtors" shall collectively mean Roger L. and Donna R. Skoczek, the debtors and debtors-in-possession in this Chapter 11 case.

1.14 "Dr. Skoz" shall mean the Debtors' business operations known as Dr. Skoz Property Maintenance in Muskego, Wisconsin, and of which the Debtors are sole proprietors and co-owners.

1.15 "Effective Date" shall mean the day that is 15 business days after the Confirmation Order is entered, provided that all conditions to effectiveness of the Plan are satisfied, or else the next business day after all conditions to effectiveness of the Plan are satisfied.

1.16 "General Unsecured Claim" shall mean an unsecured Claim without priority.

1.17 "IRS" shall mean the United States Treasury, Internal Revenue Service.

1.18 "Krekeler Strother" shall mean Krekeler Strother, S.C., counsel for the Debtors in this Chapter 11 Case.

1.19 "Petition Date" shall mean the date on which the Debtors filed a voluntary petition for relief commencing this Case, October 21, 2016.

1.20 "Plan" shall mean this Plan of Reorganization in its present form or as may hereafter be amended, modified, or supplemented in accordance with the terms hereof or in accordance with the Code.

1.21 "Priority Claim" shall mean a Claim entitled to priority under Section 507(a)(8) of the Code.

2

1.22 "Rule" and "Rules" shall mean the Federal Rules of Bankruptcy Procedure and the local bankruptcy rules as adopted by the Court.

1.23 "Secured Claim" shall mean a Claim arising on or before the Petition Date (or thereafter upon approval of the Court) that is secured by a valid Lien on property in which the Debtors' estate has an interest which is not void or voidable under any state or federal law, including the provisions of the Code.

1.24 "Secured creditors" shall mean creditors who hold a lien, security interest, or other encumbrance which has been properly perfected, as required by law with respect to the property owned by the Debtora, prior to the filing of this case, or thereafter as authorized and ordered by the Court.

1.25 "WDOR" shall mean the Wisconsin Department of Revenue.

1.26 "WDWD" shall mean the Wisconsin Department of Workforce Development.

1.27 "Reorganized Debtors" shall mean the Debtors after the Plan has been confirmed by the Confirmation Order and after the Effective Date.

Terms not defined in this Plan that are defined in the Code shall have the meanings stated in the Code.

## ARTICLE 2
## CLASSIFICATION OF CLAIMS AND INTERESTS

The claims and interests herein are classified as follows:

2.1 CLASS 1 – Administrative Priority Claims. The costs and expenses of administration of the Debtors' Case, as defined in the Bankruptcy Code, for which application has been made, provided said costs and expenses are allowed, approved and ordered paid by the Court. Such costs include all pre-confirmation fees payable under 28 U.S.C. §1930, which either have been paid or shall be paid on the effective date of the Plan, and all post-confirmation fees as required by law.

2.2 CLASS 2 – The secured claim of Wells Fargo Home Mortgage ("WF"), first mortgage on residence.

2.3 CLASS 3 – The secured claim of Landmark Credit Union ("Landmark"), second mortgage on residence.

2.4 CLASS 4 – The secured claim of Landmark Credit Union ("Landmark"), lien on equipment.

2.5 CLASS 5 – The secured claim of GreenStone Farm Credit Services, FCLA ("GreenStone"), first mortgage on second residence.

2.6 CLASS 6 – The secured claim of Kenneth Milton ("Milton").

2.7 CLASS 7 – The secured claim of GMAC ("GMAC").

3

2.8    CLASS 8 – The secured claim of the Oconto County (WI) Treasurer ("Oconto County").

2.9    CLASS 9 – The secured claims of the Internal Revenue Service ("IRS").

2.10    CLASS 10 – The priority unsecured claims of the Internal Revenue Service ("IRS"), Wisconsin Department of Revenue ("WDOR"), and Wisconsin Department of Workforce Development ("WDWD").

2.11    CLASS 11 – The non-dischargeable claim of the State of Wisconsin Department of Agriculture, Trade, and Consumer Protection ("DATCP").

2.12    CLASS 12 – All general, non-priority unsecured claims.

2.13    CLASS 13    The equity interests of the Debtors.

## ARTICLE 3
## TREATMENT OF CLAIMS AND INTERESTS

The Debtors' Plan provides for payment in full of all allowed administrative, secured, and priority unsecured claims. The amortization on these obligations has generally been extended to provide adequate cash flow and to service debt. A copy of the Debtors' monthly cash flow projection is attached hereto as Exhibit A.

**3.1 CLASS 1 – Administrative Priority Claims.** Administrative Priority Claims include all costs and expenses of the administration of this chapter 11 case allowed under Section 503(b) of the Code and entitled to priority under Section 507(a)(1) of the Code. The Plan provides for payment in full of all allowed administrative expenses on the Effective Date, unless other treatment is specifically set forth herein.

**3.1.1    The administrative expense claim of Krekeler Strother.** Krekeler Strother agrees that its claims for attorneys' fees and expenses shall be paid in full over a term of five (5) years, with interest at the fixed rate of 3% per annum, amortized over five (5) years, and in monthly payments to be determined. The amount of such fees and expenses to be approved is estimated to be $25,000.00. Such payments, however, shall be made only upon approval by the Court of such administrative expense claims. As of March 17, 2017, Krekeler Strother incurred unpaid fees and expenses for its services as counsel for the Debtors in the approximate amount of $16,500.00. Fees to Krekeler Strother will continue to accrue through confirmation, and all fees of Krekeler Strother approved by the court will be paid from the bankruptcy estate. *As stated in Debtors' Application to Employ Krekeler Strother, S.C., as Counsel for Debtors, Krekeler Strother, S.C. has released Debtors of all pre-petition fees.*

**3.1.2    The Administrative Claim of the WDWD.** *The WDWD filed an administrative claim for unemployment insurance taxes for the tax year 2016 in the total amount of $2,346.05. This claim shall be paid in full on the Effective Date of the Plan, with interest at the rate of 9%.*

4

**3.2     CLASS 2 – Secured Claim of Wells Fargo Home Mortgage.**  WF filed a secured claim in the amount of $154,690.06.  The current approximate payoff amount of WF's claim is $157,000.00, which amount includes accrued interest, and attorney's fees incurred, through and including February 2017.  As security for the payment of the Debtors' obligations, WF asserts:

- a first-position real estate mortgage in the Debtors' homestead located at W202 S7633 Ridge Road, Muskego, Wisconsin (the "Homestead"), which Homestead has a value of approximately $248,400.00;

  WF's claim shall be paid in full, with interest at the fixed rate of 4.125% amortized over 25 years, to be paid over 25 years, in monthly payments in the total amount of $840, to be applied to principal and interest, with the first payment due 30 days from the Effective Date of the Plan.

All other terms and provisions contained in the loan documents between the Debtors and WF shall remain in full force and effect. WF shall retain its lien securing its claim until such time as this claim and interest thereon have been paid in full pursuant to the terms of this Plan, at which time WF shall execute documents reasonably necessary to release all liens or security interests in the Debtors' property.

*Class 2 consisting of the secured claim of Wells Fargo Home Mortgage is impaired.*

**3.3     CLASS 3 – The secured claim of Landmark Credit Union ("Landmark") (mortgage).**  Landmark filed its Proof of Claim No. 6 as a secured claim in the amount of $40,709.34. The current approximate payoff amount of Landmark's claim is $40,000.00, which amount includes accrued interest, attorney's fees incurred, and credit for adequate protection payments made by the Debtors through and including through and including February 2017. As security for the payment of the Debtors' obligations, Landmark asserts:

- the second-position real estate mortgage in the Debtors' homestead located at W202 S7633 Ridge Road, Muskego, Wisconsin (the "Homestead"), which Homestead has a value of approximately $248,400.00;

- *a properly perfected security interest in the Debtors' Account Receivables, vehicles, and landscaping and snowplowing equipment with a total fair market value of $110,917 (See attached chart);*

Landmark's claim shall be paid in full, with interest at the fixed rate of 5.5% amortized over *15 years* ~~25 years~~, to be paid *in full in 5 years from the effective Date of the Plan,* ~~over 25 years,~~ in monthly payments in the total amount of ~~$246~~ *$327*, to be applied to principal and interest, with the first payment due 30 days from the Effective Date of the Plan.

All other terms and provisions contained in the loan documents between the Debtors and Landmark shall remain in full force and effect. Landmark shall retain its lien securing its claim until such time as this claim and interest thereon have been paid in full pursuant to the terms of this Plan, at which time Landmark shall execute documents reasonably necessary to release all liens or security interests in the Debtors' property.

5

*Class 3 consisting of the secured claim of Landmark Credit Union is impaired.*

**3.4    CLASS 4 – The secured claim of Landmark Credit Union ("Landmark") (equipment lien).**  Landmark filed its Proof of Claim No. 7 as a secured claim in the amount of $70,759.19.  The current approximate payoff amount of Landmark's claim is $69,000.00, which amount includes accrued interest, attorney's fees incurred, and credit for adequate protection payments made by the Debtors, through and including February 2017. As security for the payment of the Debtors' obligations, Landmark asserts:

> •    a properly perfected security interest in the Debtors' Account Receivables, vehicles, and landscaping and snowplowing equipment with a total fair market value of $110,917 (See attached chart);

> •    the *Landmark does not assert, but may have a* ~~second-position real estate mortgage in the Debtors' homestead located at W202 S7633 Ridge Road, Muskego, Wisconsin (the "Homestead"), which Homestead has a value of approximately $248,400.00;~~

> *Landmark's claim shall be paid in full, with interest at the fixed rate of 5.75% amortized over 10 years, to be paid over 10 years, in monthly payments in the total amount of $758, to be applied to principal and interest, with the first payment due 30 days from the Effective Date of the Plan.*

All other terms and provisions contained in the loan documents between the Debtors and Landmark shall remain in full force and effect. Landmark shall retain its lien securing its claim until such time as this claim and interest thereon have been paid in full pursuant to the terms of this Plan, at which time Landmark shall execute documents reasonably necessary to release all liens or security interests in the Debtors' property.

*Class 4 consisting of the secured claim of Landmark Credit Union is impaired.*

**3.5.    CLASS 5 – The secured claim of GreenStone Farm Credit Service, FLCA ("GreenStone").**   GreenStone filed a secured claim in the amount of $150,364.47, reflecting the balance due as of the Petition date.  As security for the payment of the Debtors' obligations, GreenStone asserts:

- a first-position real estate mortgage in the Debtors' cabin located at 9345 W. Lake Drive, Pound, Wisconsin (the "Cabin").

GreenStone's claim shall be paid in full, ~~$150,364.47,~~ with interest at the fixed rate of 5.0% amortized over 20 years, to be paid over 20 years, in monthly payments in the total amount of $993.00, to be applied to principal and interest, with the first payment due 30 days from the Effective Date of the Plan. *This claim shall be paid in full on or before the end of the 20th year.*

All other terms and provisions contained in the loan documents between the Debtors and GreenStone shall remain in full force and effect *including but not limited to the provisions requiring insurance and timely payment of real estate taxes*.  GreenStone shall retain *its liens and interests including but not limited to any judgment interests,* securing its claim until such time as this claim and interest thereon have been paid in full pursuant to the terms of this Plan, at

6

which time GreenStone shall execute documents reasonably necessary to release all liens or security interests in the Debtors' property.

***Class 5 consisting of the secured claim of GreenStone Farm Credit Service, FLCA is impaired.***

3.6.     **CLASS 6 – The secured claim of Kenneth Milton.**   Kenneth Milton has not filed a Proof of Claim.  Milton has a properly perfected security interest in the Debtors' 2005 Ford F350 Super Duty Dump Truck, 2005 Ford F250 Super Pick Up valued at $12,000.  Debtors believe the current approximate payoff amount of Milton's claim is $30,000.00.  As security for the payment of the Debtors' obligations, Milton asserts:

•       a vehicle lien on Debtors' 2005 Ford F350 Super Duty Dump Truck (FMV = $4,100), 2005 Ford F250 Super Pick Up (FMV = $7900):

Milton shall be paid the value of his collateral, with interest at the fixed rate of 5% amortized over 10 years, to be paid over 10 years, in monthly payments in the total amount of $128, to be applied to principal and interest, with the first payment due 30 days from the Effective Date of the Plan.

All other terms and provisions contained in any loan documents between the Debtors and Milton shall remain in full force and effect. Milton shall retain its lien securing its claim until such time as this claim and interest thereon have been paid in full pursuant to the terms. ***The general unsecured portion of Milton's claim in the amount of $18,000.00 shall be treated accordingly as a general, non-priority unsecured claim as more specifically discussed below.***

***Class 6 consisting of the secured claim of Kenneth Milton is impaired.***

3.7     **CLASS 7 – GMAC.**   GMAC has liens on the titles of the 2008 Chevrolet, VIN#1GCEC14X78Z290206 and 2008 Chevrolet, VIN#1GCEC14X18Z287723.  These debts were paid in full by the Debtors and they will bring motions to avoid these liens.

3.8     **CLASS 8 – The secured claim of Oconto County.**   Oconto County has a secured claim in the amount of $5,343.51 for unpaid property taxes, which claim is secured by the Second Home/Cabin.  The claim of Oconto County shall be paid full with interest at the rate of 12% per annum, to be paid in full over a term of five (5) years, in monthly payments of $119.00, with the first payment due thirty (30) days from the Effective Date.

***Class 8 consisting of the secured claim of Oconto County is impaired.***

3.9.     **CLASS 9 – The secured claim of the Internal Revenue Service ("IRS").**   The secured claim of the IRS in the amount of $41,097.25, shall be paid in full at 4% interest, amortized over five (5) years, to be paid in monthly payments of $757.00.

***Class 9 consisting of the secured claim of Internal Revenue Service is impaired.***

3.10.     **CLASS 10 – The priority unsecured claims of the Internal Revenue Service ("IRS"), the Wisconsin Department of Revenue ("WDOR"), and the Wisconsin Department of Workforce Development ("WDWD").**   The Plan provides for payment of the priority unsecured claims of the IRS and the WDOR as follows below.

**3.10.1  The priority unsecured claim of the IRS**.  The IRS filed its Priority Claim in the total amount of $32,653.45 for civil penalties for tax years 2011 and 2014 and FICA taxes for tax years 2015 and 2016; and a general unsecured portion in the amount of $2,287.41.  The priority unsecured portion of the IRS's claim in the amount of $32,653.45 shall be paid in full with interest at the fixed rate of 4.0% per annum, amortized over five (5) years, over a term of five (5) years from the Petition Filing Date, in monthly payments of $662.00.  The general unsecured portion of the IRS's claim in the amount of ~~$1,576.33~~ **$2,287.41** shall be treated accordingly as a general, non-priority unsecured claim as more specifically discussed below.  Payments shall be applied based upon the IRS's determination.

If the Debtors or their successors in interest fail to make any deposits of any currently accruing tax liability, fail(s) to make any payment of any tax to the IRS within ten (10) 10 days of the due date of such deposit or payment, or if the Debtors or their successors in the interest fail to file any required federal tax return by the due date of such return, then the United States may declare that the Debtors or their successors in interest is/are in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the Debtor or their successors in interest is/are in default.

If the United States declares the Debtors or the successors in interest to be in default of the Debtors' obligation under the Plan, then the entire imposed liability, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the debtor or the successors in interest.

If full payment is not made within 14 days of such demand, then the IRS may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code.

Any discharge granted by 11 U.S.C. § 1141 is modified as to the tax debt provided for in this plan, and the discharge of any tax debt under this plan shall not be effective until all taxes provided for under this plan have been paid in full.

### Class 10 consisting of the priority unsecured claim of Internal Revenue Service is impaired.

**3.10.2  The priority unsecured claim of the WDOR.**  The WDOR filed its Priority Claim in the total amount of $14,663.18 for sales and use taxes for tax years 2014 and 2016 and withholding tax for tax years 2014, 2015 and 2016, and a general unsecured portion in the amount of $1,095.56.  The priority unsecured portion of the WDOR's claim in the amount of $14,663.18 shall be paid in full with interest at the fixed rate of 3% per annum, amortized over five (5) years, over a term of five (5) years from the Petition Filing Date, in monthly payments of $291.00.  The general unsecured portion of the WDOR's claim in the amount of $1,095.56 shall be treated accordingly as a general, non-priority unsecured claim as more specifically discussed below.   Payments shall be applied based upon the WDOR's determination.

Case 16-30451-beh    Doc 114    Filed 06/12/17    Page 8 of 19

In the event of a default under the Plan, WDOR shall send notice of default to the Debtors/Reorganized Debtors and to counsel for the Debtors/Reorganized Debtors by first class mail. The Debtors/Reorganized Debtors shall have fifteen (15) days from the date of such notice to cure said default. In the event of failure to timely cure the default, the ~~Debtors; Discharge with respect to such taxes shall be revoked, and the~~ WDOR shall be entitled to pursue collection of all amounts owed WDOR pursuant to applicable non-bankruptcy law without: a) further recourse to the Bankruptcy Court; b) obtaining relief from the automatic stay contained in 11 U.S.C. § 362; and c) violating the discharge injunction contained in 11 U.S.C. § 524.

The WDOR shall only be required to send notices of default for two unrelated defaults; upon a third event of default, the WDOR may proceed to collect all amounts owed pursuant to applicable non-bankruptcy law without further notice.

### *Class 10 consisting of the priority unsecured claim of WDOR is impaired.*

**3.10.3** The WDWD filed its Priority Claim in the total amount of ~~$2,346.05 for unemployment insurance taxes for tax years 2016;~~ $17,809.53 for unemployment insurance taxes for tax years 2013, 2014, and 2015, and a general unsecured portion in the amount of $1,213.40. ***The priority claim for the unemployment tax owed for Quarter 2 of 2015, and Quarter 3 of 2015, an amount of $6,547.11, shall be paid in full in monthly payments of $148.00 with interest at the rate of 9% per year, amortized over 5 years, over a term of 5 years from the Petition Filing Date because the tax for these quarters is non-dischargeable.*** The ***balance of the*** priority unsecured portion of the ~~WDOR's~~ ***WDWD's*** claim in the amount ~~of $2,346.05 and $17,809.53 $13,608.47~~ ***$11,262.42*** shall be paid in full with interest at the fixed rate of 3% per annum, amortized over five (5) years, over a term of five (5) years from the Petition Filing Date, in monthly payments of ~~$400.0 $270.00~~ ***$225.00***. The general unsecured portion of the ~~WDOR's~~ ***WDWD's*** claim in the amount of $1,213.40 shall be treated accordingly as a general, non-priority unsecured claim as more specifically discussed below. Payments shall be applied based upon the WDWD's determination.

In the event of a default under the Plan, WDWD shall send notice of default to the Debtors/Reorganized Debtors and to counsel for the Debtors/Reorganized Debtors by first class mail. The Debtors/Reorganized Debtors shall have fifteen (15) days from the date of such notice to cure said default. ~~In the event of failure to timely cure the default, the Debtors; Discharge with respect to such taxes shall be revoked, and~~ The ~~WDOR~~ ***WDWD*** shall be entitled to pursue collection of all amounts owed WDWD pursuant to applicable non-bankruptcy law without: a) further recourse to the Bankruptcy Court; b) obtaining relief from the automatic stay contained in 11 U.S.C. § 362; and c) violating the discharge injunction contained in 11 U.S.C. § 524.

The WDWD shall only be required to send notices of default for two unrelated defaults; upon a third event of default, the WDWD may proceed to collect all amounts owed pursuant to applicable non-bankruptcy law without further notice.

### *Class 10 consisting of the priority unsecured claim of WDWD is impaired.*

9

**3.11.    CLASS 11 – The non-dischargeable claim of the State of Wisconsin Department of Agriculture, Trade, and Consumer Protection ("DATCP").**  DATCP has a non-dischargeable claim in the amount of $2,049.00 for a civil forfeiture offense.  Judgment was originally entered and docketed on March 11, 2011 with the Waukesha County Clerk of Courts as Case No. 2011CX000002.  On March 15, 2017, an Amended Judgment was filed per Court Operation's direction, the Creditor is to be the Plaintiff - State of Wisconsin, with money due and owing to be paid directly to Waukesha County for disbursement pursuant to Statute.  This claim shall be paid in full, without interest, over 5 years from the Effective Date, with monthly payments of $35.00.

> ***Class 11 consisting of the non-dischargeable claim of the State of Wisconsin Department of Agriculture, Trade, and Consumer Protection ("DATCP") is impaired.***

**3.12    CLASS 12 - All general, non-priority, unsecured claims.**  Class 11 consists of all allowed general non-priority unsecured claims, which total approximately $150,000.00, according to claims scheduled as undisputed, non-contingent, and liquidated or filed proofs of claim. In addition, this Class includes the claims of all judgment lien holders. All of these claimants are impaired in that each shall be paid 10 percent (10.0%) of the total amount of their claim with interest accruing at 3% ***per annum, amortized and paid*** ~~amortized~~ over a term of fifteen (15) years. This amount, totaling approximately $15,000.00, is in excess of the sums that would be available to pay general, unsecured creditors if, after deducting for exempt property that the Debtors are allowed to retain, their remaining property was liquidated.  The Debtors have devoted the value of all their remaining non-exempt assets to fund this Plan in accordance with the absolute priority rule**.**  As a result, these claimants shall share pro rata in monthly distributions of $104.00, with the first payment due thirty (30) days from the Effective Date.

> ***Class 12 consisting of general, non-priority, unsecured claims is impaired.***

~~**3.13    CLASS 13** – Any equity interest of the Debtors shall be retained by them, same being of nominal or no value to creditors.~~

## ARTICLE 4
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**4.1**    Any and all executory contracts or unexpired leases to which the Debtors were a party as of the Petition Date shall be deemed rejected as of the Effective Date, ***except*** with respect to the following parties:

**4.1.1    Gary McGowan.**  The Confirmation Order shall authorize and approve the Debtors' assumption of the Debtors' current business lease/contract for the business office space.  No amount is required to cure any outstanding defaults under this business lease.

**4.1.2    Dish Network.**  The Confirmation Order shall authorize and approve the Debtors' assumption of their executory contract with Dish Network.  No amount is required to cure any outstanding defaults under the Debtors' executory contract with Dish Network.

## ARTICLE 5
## IMPLEMENTATION OF PLAN

**5.1**     To effectuate the proposed Plan, the Debtors shall continue their operations as sole proprietors and co-owners of Dr. Skoz, will utilize profits, revenues, income from operations, and cash on hand on the Effective Date.

**5.2**     The Debtors shall retain all property of the estate, no transfer of estate property being anticipated at this time except as may be particularly set forth herein. The Debtors reserve the right to sell or transfer any of its property, with the proceeds to be distributed to lien holders according to their priorities.

**5.3**     All outstanding judgment liens, if any, shall be satisfied upon the Effective Date of the Plan, and all pending suits shall be dismissed, except as particularly set forth herein.

**5.4**     Interest on all allowed secured claims shall commence upon the Effective Date of the Plan.

**5.5**     Unless otherwise expressly set forth herein, payments to creditors under the Plan shall commence within 30 days from the Effective Date of this Plan.

**5.6**     The Debtors may prepay any amount to any Class at any time without penalty.

**5.7**     No distributions of under $5.00 shall be made by the Debtors, and no payments shall be made on claims under that amount. Any distribution checks which have not been negotiated and cleared six months after their distribution may be cancelled by the Debtors without further liability for that distribution.

**5.8**     All distributions shall be mailed to creditors at the addresses shown on the Debtors' schedules, except those creditors who have filed Proofs of Claim or notices of appearance in this action shall have their distribution checks sent to the addresses shown on those documents. Any creditor may change the address for mailing of its distribution check by written notice to counsel for the Debtors. Any distribution checks properly sent to such addresses which are returned shall become the property of the Debtors without further liability for such distributions.

**5.9**     Confirmation of this Plan shall not preclude or estop the Debtors from pursuing any claims of the estate, including any Avoidance Actions, nor any other claims against any of the Debtors' creditors for offset.

**5.10**     **The Reorganized Debtors.**  The Debtors shall emerge from Bankruptcy as the Reorganized Debtors, with all of the rights, powers, duties and obligations as set forth below.

> (a) <u>Vesting of all Property</u>.   Except as expressly provided in this Plan, on the Effective Date, all assets of the Debtors' Bankruptcy Estate shall vest in the Reorganized Debtors.

11

(b) <u>Governance, Powers and Duties</u>. On and after the Effective Date, the Reorganized Debtors may operate their business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code and the Court. The Reorganized Debtors shall also have the powers, duties, and obligations set forth in this Plan. On and after the Effective Date, all actions required of the Debtors shall be taken by the Reorganized Debtors, or their designee, in the name of and on behalf of the Debtors and their bankruptcy estate. The Reorganized Debtors shall be authorized to execute documents on behalf of the Debtors and their bankruptcy estate. The duties, responsibilities and obligations of the Reorganized Debtors include, but are not limited to, all matters for which the Court is retaining jurisdiction, including the following:

- making Distributions under the Plan;

- preparation and filing of tax returns, on behalf of the Debtors, their bankruptcy estate, including the right to request a determination of tax liability as set forth in Section 505 of the Bankruptcy Code;

- requesting and receiving of W-9 federal tax forms for any party who is entitled to receive a distribution on account of a Claim or Interest;

- prosecution and resolution of Causes of Action, if any, including any Avoidance Actions;

- Claims objections and reconciliation;

- payment of any post-confirmation fees due to the Office of the United States Trustee; and

- the compromise and settlement of Claims, Causes of Action, and other proceedings and matters.

(c) <u>Attorney Client Privilege to Extend to Reorganized Debtors</u>. The Reorganized Debtors shall stand in the same position as the Debtors with respect to any right the Debtors may have to an attorney-client privilege, the work product doctrine, or any other privilege against production, and the Reorganized Debtors shall succeed to all of the Debtors' rights to preserve, assert or waive any such privilege.

(d) <u>Retention of Professionals</u>. The Reorganized Debtors may retain such attorneys (including special counsel), accountants, advisors, expert witnesses, and other professionals as he shall consider advisable without necessity of approval of the Court. Persons who served as professionals to the Debtors prior to the Effective Date may serve as professionals to the Reorganized Debtors. The fees and expenses of the Reorganized Debtors and professionals retained by them shall be paid by them in the ordinary course of business and without Court review or approval.

12

(e) <u>Causes of Action Retained and Preserved.</u>  All causes of Action that are not otherwise compromised, settled, released or waived pursuant to the terms of this Plan shall be retained by the Reorganized Debtors and preserved. Except as otherwise expressly provided in the Plan, the Reorganized Debtors retain all rights, claims, defenses, setoffs, recoupment, and causes of action the Debtors or their estate may have against any third parties, and may pursue and/or enforce such retained rights, claims, defenses or causes of action in accordance with applicable non-bankruptcy law.

(f) <u>Capital Gains Taxes.</u>  Any taxes payable on capital gains realized by the Debtors as a result of the disposition of certain assets under the Plan, or by any person or entity contributing assets to the Debtors under the Plan, shall be paid when and as they become due. The Debtors reserve the right to change the contemplated structure of the Reorganized Debtors, including the ability to decline any assets that would be transferred to it under this Plan, in order to minimize the overall tax liability; provided, that such changes shall not relieve the Debtors from the obligation to treat Claims as provided in Articles 3.

(g) <u>Bar Date and Resolution of Claims.</u>  All holders of Contested Claims, including unpaid Administrative Claims and professional fees, must file with the Court their final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date within ninety (90) days after the Confirmation Date and in accordance with the substantive and procedural requirements in the Bankruptcy Code. The Reorganized Debtors shall be responsible for the resolution of Claims, and shall have standing to object to the allowance of any Claim and to assert and prosecute any counterclaim relative thereto (without prejudice to any right of any other party in interest to do so under applicable law). All such objections and counterclaims shall be filed within one-hundred twenty (120) days after the Confirmation Date, or within such further time as may be fixed by the Court on motion of the Reorganized Debtors filed within such 120-day period.

(h) <u>Unresolved Claims</u>.  If on a date on which payments are made on account of the Allowed Claims of a given class, there exist any Unresolved Claims in such class, the amount of cash distributed to holders of Allowed Claims in that class shall be determined as if all Unresolved Claims were Allowed Claims in the full amount claimed by the holders thereof (or in such lesser amount as the Court determines by Final Order) and the Reorganized Debtors shall, in such circumstances, hold in a separate reserve account the cash that would have been distributed to the holders of the Unresolved Claims for such class if the full amount of their Claims, or such lesser amount as the Court determines, were Allowed Claims on such distribution date. Interest earned on cash in the reserve account shall likewise be added to the balance of the reserve account, which shall be shared pro rata among the Claims of such class in accordance with the terms of this Plan.

13

To the extent that an Unresolved Claim becomes an Allowed Claim after payments are made on account of Allowed Claims in such class, the Reorganized Debtors shall, as soon as practicable thereafter, distribute to the holder of the newly Allowed Claim the amount of cash that such holder would have received to date had its Claim been an Allowed Claim as of the Effective Date. To the extent that all or a portion of any Unresolved Claims are disallowed, as part of the next distribution, the Reorganized Debtors shall distribute to each holder of an Allowed Claim, and reserve for each remaining Unresolved Claims in the same class as such disallowed Claims, a pro rata share of the amount held in reserve for the disallowed portion of the Unresolved Claims.

**ARTICLE 6**
**DISCHARGE AND RELEASE**

Upon the completion of all payments provided for under Article 3, the Debtors shall be discharged of all Claims against them. The Debtors' discharge of debts pursuant to this Plan shall not be effective until the completion of the Plan obligations described in Article 3. Should these Plan obligations not be performed, the Debtors, or any other party in interest, shall retain the ability to move the Court to convert his Case to one under Chapter 7 of the Code, and the entry of the Confirmation Order shall not be deemed a "discharge...under Section 1141 of title 11" within the meaning of Section 727(a)(8) of the code.

**ARTICLE 7**
**RETENTION OF JURISDICTION BY THE COURT**

After the Confirmation Date, the Court may retain jurisdiction, and if the case is closed reopen it, for the following purposes, or as otherwise permitted by law:

**7.1     Objections to Claims.** To hear and determine any objections to the allowance of Claims, and requests for the estimation or liquidation of Claims.

**7.2     Fee Applications.** To hear and determine any and all applications for compensation of professional services and disbursements.

**7.3     Avoidance Actions**. To hear and determine any Avoidance Action or other proceedings to set aside (or preserve for the benefit of the Estate) or recover any property under applicable provisions of the Bankruptcy Code or other federal or state law.

**7.4     Recover Estate Assets.** To recover all assets of the Estate, wherever and however located.

**7.5     Pending Matters.** To hear and determine any pending applications, motions, adversary proceedings, and other contested matters not resolved by the Plan.

**7.6     Modification of Plan.** To modify the Plan to the extent permitted by the Plan and the applicable provisions of section 1127 of the Bankruptcy Code.

14

**7.7    Enforcement of Payments, Rights, and Interests.** To enforce the terms and provisions of payments, rights, and interests required or created by the Plan.

**7.8    Executory Contracts and Unexpired Leases.** To hear and determine all Claims or controversies arising from the assumption or the rejection of any executory contracts or unexpired leases and to consummate their assumption or the rejection.

## ARTICLE 8
## CLOSING AND REOPENING OF THE CASE

**8.1    Closing.** Upon substantial consummation of the Plan, the Reorganized Debtors may apply for an order closing the case under section 350(a) of the Bankruptcy Code. The Plan shall be deemed to be substantially consummated after (a) the order confirming the Plan has become final; (b) the Debtors or the Reorganized Debtors have assumed the business of the management of the property dealt with by the Plan; (c) payments under the Plan have commenced, and (d) all motions, applications, contested matters, and adversary proceedings have been finally resolved.

**8.2    Reopening.** The case may be reopened pursuant to Bankruptcy Code § 350(b) to administer assets, to grant the Debtors other relief, to seek conversion or dismissal upon occurrence of a subsequent material default under the plan, to hear and resolve any matter or proceeding over which the Court has retained jurisdiction, or for other cause.

## ARTICLE 9
## OTHER REQUIRED PROVISIONS

**9.1**    Any payments made or to be made by the Debtors for services or for costs and expenses in connection with this case, or in connection with the Plan and incident to this case, have been approved by, or are subject to the approval of the Court, as reasonable.

**9.2**    All quarterly fees payable under 28 U.S.C. Section 1930 shall be paid on or before the effective date of the Plan, as required by 11 U.S.C. Section 1129(a)(12). The Reorganized Debtors shall continue to file quarterly fee statements and pay quarterly fees when due until this case is converted, dismissed, or closed. The Bankruptcy Court shall retain jurisdiction necessary to enforce the provisions of this paragraph.

**9.3**    Confirmation of this Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors under this Plan.

**9.4**    The Debtors have no retirement benefits which are required to be continued under 11 U.S.C. Section 1129(a)(13).

## ARTICLE 10
## CONCLUSION

The proposed Plan set forth herein reflects the Debtors' best efforts to reorganize in an orderly fashion. The Plan attempts to provide full payment to most of the Debtors' secured

creditors and a substantially greater dividend to unsecured creditors than they are likely to receive if Debtors liquidates their assets.

This Plan deals fairly and equitably with all of the creditors involved and approval of this Plan is in the best interests of the Debtors' creditors.

Dated this 9th day of June, 2017.

**KREKELER STROTHER, S.C.**

Jeffrey D. Friebert, State Bar No. 1006561
Eliza M. Reyes, State Bar No. 1030764
*Attorneys for Debtors,*
*Roger L. Skoczek and Donna R. Skoczek*

**ADDRESS:**
2901 W. Beltline Hwy., Suite 301
Madison, WI 53713
(608) 258-8555
(608) 663-0287–Fax
jfriebert@ks-lawfirm.com
ereyes@ks-lawfirm.com

16

40. **Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**
☐ No
☒ Yes. Describe.....

| | |
|---|---|
| Western Ultra Mount MVP Plue 9.5' V Plow | $2,000.00 |
| SaltDogg SHPE 2000 Spreader | $1,000.00 |
| Boss Power V-Plow | $3,000.00 |
| 14' Haulmark Trailer | $1,500.00 |
| Stihl Cut-Off Saw TS420 | $700.00 |
| David White Laser Level Complete | $700.00 |
| Solo Back Pack Sprayer #1 - 4 gal | $50.00 |
| Solo Back Pack Sprayer #2 - 4 gal | $50.00 |
| Solo Back Pack Sprayer #3 - 4 gal | $50.00 |
| Solo Sprayer - 2 gal | $50.00 |
| 2 - Contree 200 Gal. Space Saver Sprayers | $800.00 |
| 200 Gal Water Tank | $100.00 |
| Powerhorse 208cc Semi-trash pump | $100.00 |
| Stihl Hedge Trimmer HS 56C | $100.00 |
| Echo Back Pack Blower PB620ST | $125.00 |
| Irrigations Supplies | $50.00 |
| Yard Camel Irrigation System | $200.00 |
| Misc. Hand Tools/Shovels/Rakes | $100.00 |
| Toro Single Stage 621R Snowblower | $400.00 |
| Toro Single Stage 621R Snowblower | $400.00 |

| Item | Value |
|---|---|
| Toro Single Stage 210E Snowblower | $100.00 |
| Toro 2 stage Powermax 8280EX Snowblower | $125.00 |
| Toro 2 stage Powermax 8280EX Snowblower | $125.00 |
| Toro Lawn Mower 22" self | $50.00 |
| MTD Lawn Mower 21" Push | $50.00 |
| Toro Lawn Mower 21" Self | $50.00 |
| 60" Dixie Chopper | $2,000.00 |
| 60" Graveley | $2,000.00 |
| 52" Toro | $1,000.00 |
| 32" Toro | $800.00 |
| Office Equipment (Desks, Chairs, Tables, Cabinets, etc.) | $2,000.00 |
| Electrical Equipment (Computers, Fax, Copier, Printer, etc) | $8,055.00 |
| 2 - 9'2" Boss V Plows | $2,000.00 |
| 3 - 8'2" Boss V Plows | $2,500.00 |
| John Deere Gator W006X4X04011 | $800.00 |
| Simplicity 32" Mower Regent Hydro | $300.00 |
| Bearcat Chipper 205055 | $300.00 |
| 2 - Scagg Mowers | $400.00 |
| 60" Lesco Z Two Mower | $100.00 |
| Ditch Witch 100 SXH 4Z0118 | $1,000.00 |

| Item | Value |
|---|---|
| Yale Forklift<br>N463742 | $600.00 |
| Classen Aerotor | $300.00 |
| Brown Bed Edger<br>7147 | $200.00 |
| Industrial Air Compressor | $100.00 |
| 4 - Byers Salt Spreaders | $2,000.00 |
| Classen Sod Cutter | $200.00 |
| 20" Stihl Chain Saw | $300.00 |
| 30" Stihl Chain Saw | $700.00 |
| 20" Craftsman Chain Saw | $200.00 |
| Tools and 2 Tool Boxes | $2,000.00 |
| Business equipment | $0.00 |
| Z Spray Fertilizer Machine | $5,000.00 |
| 751 Bobcat | $7,000.00 |